FILED

2009 Sep-29  PM 01:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **BERNICE J. FARR,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-08-S-1960-S** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Bernice Farr commenced this action on October 21, 2008, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ") denying her claim for a period of disability, disability insurance, and supplementary security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards.  Specifically, claimant asserts that the ALJ failed to consider the combined effect of all of claimant's impairments on her ability to perform work activities, and failed to fully and fairly develop the administrative record by neglecting to consider all of the medical evidence.  Upon review of the record, the court concludes these contentions are without merit.

Social Security regulations state the following with regard to the Commissioner's duty in evaluating multiple impairments:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 1523.  *See also* 20 C.F.R.  §§ 404.1545(e), 416.945(e) (stating that, when the claimant has any severe impairment, the ALJ is required to assess the limiting effects of *all* of the claimant's impairments — including those that are not severe —

in determining the claimant's residual functional capacity).  Here, the ALJ found that claimant suffered from the severe impairments of status-post brain injury and panic attacks.  A review of the ALJ's decision as a whole, however, reveals that the ALJ considered all of claimant's impairments in combination when assessing claimant's functional limitations.  For example, the ALJ addressed claimant's brain injury, seizures, memory problems, anxiety, panic attacks, depression, headaches, pain, and confusion.  Furthermore, the ALJ explicitly stated that claimant's severe impairments, "when considered singly *or in combination*," did not meet any of the listings.[1]  This statement is sufficient to indicate that the ALJ properly considered all of claimant's impairments.  *See Wilson v. Barnhart,* 284 F.3d 1219, 1224 (11th Cir. 2002); *Jones v. Dept. of Health and Human Services,* 941 F.2d 1529, 1533 (11th Cir. 1991).

The court also finds that the ALJ did not err in developing the administrative record, or in evaluating the medical evidence.  A claimant bears the ultimate burden of producing evidence to support her disability claim.  *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §§ 416.912(a), (c)).  Even so, the ALJ "has an obligation to develop a full and fair record, even if the claimant is represented by counsel." *Nation v. Barnhart,* 153 Fed. Appx. 597, 598 (11th Cir. 2005) (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).  From a

---

[1]Tr. at 19 (emphasis supplied).

review of claimant's brief, it is somewhat difficult to discern the basis for her argument that the ALJ did not properly develop the record.  Claimant appears to base that argument on the allegation that the ALJ did not consider medical evidence from the entire time period relevant to claimant's claim for disability, *i.e.,* from November 15, 2003, the alleged onset date, to May 21, 2007, the date of the ALJ's decision. Claimant asserts that "the ALJ's failure to indicate in the decision whether or not he considered her disability for the entire period was contrary to the Social Security Laws and Regulations."[2]   The record simply does not support that conclusion.  To the contrary, the ALJ's decision reflects that he evaluated medical evidence from November of 2003 all the way through July of 2006.[3]  Claimant does not point to any medical evidence from *after* July of 2006 that the ALJ should have, but did not, consider.

Claimant's real problem with the ALJ's decision seems to be that the ALJ chose not to fully credit portions of the opinions rendered by consultative examiners in March and July of 2006.  Social Security regulations state that, in considering what weight to give any medical opinion, the Commissioner should evaluate:  the extent of the examining or treating relationship between the doctor and patient; whether the

---

[2]Doc. no. 8 (claimant's brief), at 10.
[3]*See* Tr. at 17-19.

4

doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Julie Hay performed a consultative examination on March 23, 2006. Dr. Hay noted that, while claimant's gait was normal and she could bend over without difficulty, claimant did have "some difficulty with heel and toe walking" and "significant difficulty with squatting."[4]  Claimant had full range of motion all over her body, but she did experience "significant pain" with movement of her right knee.[5] She also had complete upper and lower extremity strength, normal posture, and normal reflexes and sensory exam. Dr. Hay diagnosed memory loss and arthritis of the right knee, and gave the following narrative "Functional Assessment/ Medical Source Statement":

> The following functional assessment is based on today's physical exam and a review of the available medical records.  The claimant

---

[4]Tr. at 236.

[5]*Id.*

5

presents today applying for disability based on a head injury which occurred in 2003 as well as right knee pain.  She did suffer significant trauma from her head injury that occurred in 2003.  She did not require any interventions at that time.  Most of her neurological complaints have been over the past 6 months including her memory loss.  She reports her family has observed this and it has progressed over the past 6 months.  In speaking with her it is very hard to relate this to the fall she had in 2003 as she did go back to work after this injury and also the time period is not consistent with when she fell.  She also has a significant family history for Alzheimer's and my concern would be she is in the early stages of Alzheimer's and should have further workup and potential medical treatment for this.

Based on the history that she provides she would have a difficult time working.  Her memory loss would certainly make it difficult to do certain jobs.  I do not believe this memory loss is related to the fall she suffered in 2003.  On exam she was alert and oriented x3 and showed no mental status changes or evidence of memory loss.

She also complained of right knee pain that she is currently only medicating with Ibuprofen.  She would likely benefit from more aggressive medical care and an evaluation from an Orthopedic surgeon for possible steroid injections vs. more invasive procedures.  She would benefit from physical therapy.  She is able to take walks on a daily basis and is able to clean her church which indicates to me that this knee pain is not significant enough to prevent her from doing most of the activities she desires.  On exam she has full range of motion of that knee although she did have significant pain.  I feel that further medical and possibly surgical management would likely benefit her greatly.[6]

Dr. Hay also imposed the following physical limitations:  standing and/or walking two to four hours in an eight-hour workday with frequent breaks; sitting two to four hours in an eight-hour work day with frequent breaks; lifting and/or carrying only ten

---

[6]Tr. at 237.

pounds; and only occasional climbing and/or kneeling.[7]   On a Clinical Assessment of Pain form, Dr. Hay indicated that claimant experienced pain, but not at a level that would prevent functioning in everyday activities or work; that physical activity would greatly increase pain to such a degree as to cause distraction from, or total abandonment of, tasks; that claimant would not experience side effects from her medication; and that claimant had an underlying medical condition consistent with the pain she experiences.[8]

The ALJ assigned Dr. Hay's functional assessment little weight, because her assessment was "inconsistent with her own objective, clinical findings on examination."[9]   This conclusion was supported by substantial evidence.   While Dr. Hay imposed limitations on claimant's ability to sit, stand, walk, lift, carry, climb, and kneel, the physical examination Dr. Hay performed on claimant revealed only problems with heel/toe walking and kneeling.   Furthermore, Dr. Hay stated that she did not believe claimant's pain was sufficiently severe to prevent her from doing most activities she desired.   Dr. Hay's other assessments also do not reveal disabling functional limitations.   This is true even though Dr. Hay mentioned the possibility that claimant could suffer from early Alzheimer's.   Dr. Hay did not diagnose

---

[7]*Id.* at 238.

[8]Tr. at 240-41.

[9]Tr. at 20.

7

Alzheimer's; she merely recommended that claimant undergo a more detailed evaluation. Furthermore, there is no indication that, if plaintiff *did* suffer from Alzheimer's, her symptoms actually caused any disabling limitations. It also is true despite the fact that Dr. Hay noted claimant's memory loss had increased over the past six months. Even if claimant's symptoms had been worsening over time, Dr. Hay's assessment still does not indicate disabling limitations.

Susan J. Kotler, Ph.D., a psychologist, examined claimant on July 1, 2006, and submitted a report on July 3, 2006. Dr. Kotler administered a series of psychological tests, including the Beck Depression Inventory, the Boston Diagnostic Aphasia Examination (Cookie Theft), the Clock Drawing Test, the Grooved Pegboard Test, the Information/Orientation Questions, the Judgment subtest (COGNISTAT), the Repeatable Battery for the Assessment of Neuropsychology Status (RBANS), the Trailmaking Test Parts A and B, the Wide Range Achievement Test – III (WRAT-III – Reading), the Wechsler Adult Intelligence Scale-III (WAIS-III – selected subtests), and the 15-Item Memory Test.[10] Dr. Kotler's diagnostic impressions were cognitive disorder, not otherwise specified, related to claimant's traumatic brain injury; anxiety disorder, not otherwise specified, including symptoms of GAD, panic, claustrophobia; depressive disorder, not otherwise specified; history of closed head injury with

_____

[10]Tr. at 248.

8

subarachnoid hemmorhage in right frontotemporoparieteal region; and moderate psychosocial stressors.  Dr. Kotler assessed a GAF of 50, indicating that serious symptoms are present, and that the individual manifests serious difficulty in social, occupational, or school settings.  *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision, 4th ed. 2000).[11]

Dr. Kotler gave the following narrative summary of claimant's condition:

Ms. Farr's performance on neuropsychological testing is consistent with the effects of a traumatic brain injury.  In particular, her relatively poorer performance on tests of visuospatial-constructional abilities (e.g., figure copying and clock drawing) and very poor memory for stories/ narratives compared to memory for lists of words are consistent with an injury to the right hemisphere.  Deficits on tests of verbal fluency, visuomotor sequencing, and mental tracking/sequencing abilities are also consistent with dysfunction of the frontal systems. Quantitatively, the severity of her deficits in these areas is mild/moderate, except for her memory for stories and complex mental/visuomotor sequencing abilities, which are moderately-severely impaired.  Qualitatively, Ms. Farr exhibits deficits in "self-control" of her cognitive processes (e.g., keeping track of what she is doing, thinking, and saying), and the behavioral observations reveal deficits in self-regulation of her behavior (e.g., impulsivity/disinhibition and limited awareness of errors).  Inconsistencies between the information she presents today and the information in the records may be partially related to her problems with awareness of chronological sequence or integration of details, which are also problems associated with a brain injury.  Such deficits in frontal/executive functioning are common sequelae of a traumatic brain injury, and are generally consistent with the previous brief psychological evaluation at Spain Rehabilitation Center in 11-03 and the limited neuropsychological evaluation from 10-

[11]*Id.*

9

31-05.  Furthermore, Ms. Farr's detailed descriptions of the changes in her cognitive functioning, mood, personality, and behavior since the injury are also consistent with the effects of the brain injury she has suffered.  While depression and anxiety could contribute to problems with attention, retrieval of information on demand, and mental tracking abilities, such mood disturbance cannot entirely account for her cognitive and behavior problems.

. . . .

Although Ms. Farr's scores on the tests today indicate mild to moderate functional limitations in several areas, the qualitative deficits in her ability to organize, sequence, keep on track, and control her thoughts and behavior would likely result in more significant functional limitations.  In addition, problems that are mild by objective standards may have more of an impact on the functioning of older individuals.  Ms. Farr is currently experiencing a moderate restriction in her daily activities due to her cognitive, behavioral, and emotional problems.  Based on her description of disinhibited behavior and diminished interest in, and tolerance for being around others, and her mood disorders, she would have moderate limitations in maintaining social functioning for any prolonged period of time.  Similarly, her ability to interact appropriately with coworkers, the general public, and supervisors would be moderately limited.  Ms. Farr's description of difficulty completing tasks and the test results today indicate that she would have marked difficulty sustaining her concentration and persistence, particularly when presented with complex tasks or if multitasking were required.  Even then, while she is capable of understanding and remembering simpler, routine, repetitive, and structured tasks, she would have marked difficulty persisting on such tasks due to her forgetfulness and tendency to get off task easily.  Given her high level of chronic anxiety, panic attacks from everyday stressors, emotional lability, and deficits in awareness and problem-solving abilities, she would likely have moderate difficulty responding to customary work pressures.  Of special concern for workplace safety are her impulsivity and limited awareness of mistakes she makes.

The prognosis for improvement in Ms. Farr's condition is fair. . . . Although there is not likely to be significant improvement in her cognitive functioning at this point, she could benefit from learning how to cope with her cognitive deficits and to develop compensatory strategies for them (e.g., breaking down tasks into smaller steps, limiting exposure to noise and activity, etc.) as well as for her behavior problems so that she might become less functionally impaired. I would strongly recommend individual therapy with a clinical neuropsychologist and/or participation in support groups and other activities for brain injured individuals and their families through the Alabama Head Injury Foundation. I would recommend evaluation by a behavioral neurologist to determine if there are any medications that may be helpful in diminishing her impulsive and disinhibited behavior.[12]

On a residual functional capacity questionnaire, Dr. Kotler assessed moderate restrictions of activities of daily living; moderate difficulty in maintaining social functioning, marked deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; moderate impairment of ability to respond to customary work pressures; marked restrictions in ability to understand, carry out, and remember instructions in a work setting; moderate restrictions in ability to respond appropriately to supervision and co-workers in a work setting; and moderate restrictions in ability to perform simple and repetitive tasks in a work setting. Dr. Kotler indicated that these limitations had lasted or could be expected to last for twelve months or longer.[13]

---

[12]Tr. at 248-50.

[13]Tr. at 252-53.

The ALJ stated that Dr. Kotler's assessment was "not controlling on whether the claimant is disabled," because the assessment was "formed primarily by Ms. Farr's subjective complaints," and because Dr. Kotler "appeared to uncritically accept all of [claimant's] assertions as true."[14]   Claimant disagrees with that statement, because Dr. Kotler performed multiple psychological tests on claimant.   Even considering claimant's test results, however, Dr. Kotler's assessment does not reflect disabling limitations.  Dr. Kotler noted that claimant's test scores alone revealed only mild to moderate limitations in all cognitive areas, except for her memory for stories and complex mental/visuomotor sequencing abilities, which were moderately to severely impaired.  It was only when Dr. Kotler factored in claimant's *subjective* complaints of memory loss and other problems that Dr. Kotler concluded that claimant's impairments actually were closer to moderate or marked.  Even then, however, Dr. Kotler only stated that claimant experienced marked impairments in the areas of sustaining concentration, persistence, and pace, and in her ability to understand, carry out, and remember instructions in a work setting.  While the ALJ did not fully credit these restrictions imposed by Dr. Kotler (the ALJ found only *moderate* limitations of concentration, persistence, and pace), it also cannot be said that he fully ignored them.  The ALJ's residual functional capacity finding restricted

---

[14]Tr. at 21.

claimant to "simple, non-complex tasks,"[15] and that finding was supported by the record as a whole.

In summary, the court concludes that the ALJ's residual functional capacity finding was supported by substantial evidence of record, that the ALJ properly considered all of the medical evidence, that the ALJ fully and fairly developed the record, and that the ALJ properly considered all of claimant's impairments in combination. The court does, however, pause to make one final observation about Dr. Hay's suggestion that claimant might be suffering from early Alzheimer's. The court's decision is that, based upon the record presented to the ALJ and the Appeals Council, there was not substantial evidence to support the conclusion that claimant actually suffered from Alzheimer's, much less that the condition was causing disabling functional limitations. Even so, the court's opinion should not be construed to downplay the significance of claimant's condition. If claimant does in fact suffer from Alzheimer's, it is likely (if not certain) that, as the condition progresses, she *will* begin to suffer from disabling limitations in the future. Evidence of any such impairments could be relevant to a future application for benefits.

In accordance with all of the foregoing, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this

---

[15]Tr. at 21.

file.

    DONE this 29th day of September, 2009.

                                            _____
                                            United States District Judge

14